142 F.3d 440
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Reginald DALE, Defendant-Appellant.
 No. 97-1585.
 United States Court of Appeals, Seventh Circuit.
 Submitted April 30, 1998.
Decided April 30, 1998.
 
 Appeal from the United States District Court for the Central District of Illinois, No. 93 CR 30013, Richard Mills, Judge.
 Before Hon. RICHARD A. POSNER. Chief Judge, Hon. WALTER J. CUMMINGS and Hon. KENNETH F. RIPPLE, Circuit Judges.
 
 ORDER
 
 1
 Reginald Dale was found guilty by a jury of one count of being a felon in possession of a weapon in violation of 18 U.S.C. § 922(g). Dale's counsel filed a notice of appeal but now seeks to withdraw under Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), because he considers an appeal to be without merit or possibility of success.[1] Counsel was notified of the opportunity to file a response to the Anders motion pursuant to Circuit Rule 51(a), which he has not done. Because counsel's Anders brief is adequate on its face, we limit our review of the record to those issues raised in counsel's brief and supplement to the brief. United States v. Tabb, 125 F.3d 583, 584 (7th Cir.1997); United States v. Wagner, 103 F.3d 551, 553 (7th Cir.1996). We grant counsel's motion to withdraw and dismiss the appeal.
 
 
 2
 While on patrol on March 16, 1996, Officer Wendell Banks saw Dale sitting in his car speaking with a man who was standing outside the car. As Banks approached the car, Dale sped away and Banks followed. Banks testified that while he pursued Dale, he saw the driver's door open at one point. Banks then pulled behind the car with his lights and siren activated. Dale pulled over and Banks called for back-up. When the other officer, Officer Lewis, arrived, Banks asked him to go back to the area where Banks had seen the defendant open his door in order to see if Dale had thrown anything from the car. As Banks was talking with Lewis, Dale sped away and Banks and Lewis gave chase. Several blocks later, Dale left his car and began running away. Dale subsequently was found hiding under a car in a hospital parking lot.
 
 
 3
 George Tucker testified that while he was delivering newspapers from his van in the early morning of March 16, 1996, he saw a car speed past him. Soon after the car passed him, he saw the driver's door open and a gun tumble out from underneath the car. He testified that the gun appeared to be a revolver, though he could not tell the exact size and color. At the time when Dale sped away the second time from Banks and Lewis, Tucker approached and told another officer at the scene, Officer Anderson, what he had seen and where the gun was located. Tucker accompanied Anderson and another officer to retrieve the gun while Banks and Lewis chased Dale. Meanwhile, after Dale had left his car, another officer, Officer Carpenter, searched the car and found a photograph of Dale and three other men. In the photograph, Dale was holding a gun similar to the one that was dropped from the car. Before trial, defense counsel filed a motion in limine to prevent the government from entering the photograph into evidence, contending that it was inadmissible under Federal Rules of Evidence 401, 403, and 404(b). The district court denied the motion stating that the photograph was relevant, was not unduly prejudicial,[2] and appropriately was admitted as "other acts" evidence pursuant to Fed.R.Evid. 404(b).
 
 
 4
 Counsel asserts as a first potential argument on appeal that the photograph of Dale with a .38 snub-nosed revolver should not have been admitted during trial, claiming that it was used only to demonstrate Dale's propensity to commit the crime. We conclude that such an argument would be frivolous. This court reviews the admission of evidence under Rule 404(b) for an abuse of discretion. See United States v. Smith, 103 F.3d 600, 602 (7th Cir.1996). Evidence is admissible pursuant to Rules 404(b) and 403 if: (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged; (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue; (3) the evidence is sufficient to support a finding that the defendant committed the similar act; and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. See Smith, 103 F.3d at 603.
 
 
 5
 We agree with counsel that a claim based on the admission of the photograph as evidence of "other acts" would be frivolous. One officer testified that the code on the back of the photograph indicated that the film had been manufactured in October 1995, approximately seven months before the charged incident. Accordingly, it was close enough in time to be relevant. The only element of the crime that the government needed to prove was possession, as the other two elements of the crime had been stipulated. The photograph could have been used to establish the defendant's opportunity to possess a firearm and the absence of mistake (i.e., that it was someone else's gun that was seen coming from the car). Accordingly, the photograph was sufficient to demonstrate that Dale had the opportunity to possess a snub-nosed revolver and that the revolver that Tucker saw being dropped from Dale's car was, in fact, Dale's. We would agree with the district court that the probative value of the photograph outweighed any undue prejudice; thus, any argument based on the admissibility of the gun would be frivolous.
 
 
 6
 Further, the photograph properly was admitted under the "intricately related" doctrine by which evidence of uncharged criminal activity is admissible even if it does not satisfy the requirements of Rule 404(b) provided that the evidence is "intricately related to the facts of the case." See United States v. Ramirez, 45 F.3d 1096, 1102 (7th Cir.1995) (internal citation omitted). Evidence is considered intricately related if it is so " 'blended or connected' that it incidentally involves, explains the circumstances surrounding, or tends to prove any element of, the charged crime." Id. (internal citation omitted). Here, the photograph tended to prove that Dale possessed a snub-nosed revolver. We would conclude that the district court did not abuse its discretion in admitting the photo; accordingly, any challenge to the admission of the photograph would be frivolous.
 
 
 7
 Counsel also asserts that Dale could challenge the sufficiency of the evidence. We review challenges to the sufficiency of the evidence by determining whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 316, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). As stated previously, Dale stipulated to the first two elements of the crime. Accordingly, the government's only burden was to prove possession beyond a reasonable doubt. Tucker testified that he saw the driver's door open as Dale's car sped past him and immediately thereafter a revolver tumbled out from under the car. Tucker stayed by the gun for several minutes after it was dropped from the car to ensure that two pedestrians did not touch it. He then directed police to the area where the gun was retrieved and testified that the gun was in the same place when he returned with police as when he left it after it had been dropped from Dale's car. Officer Banks substantiated Tucker's testimony in part when he stated that he also saw the driver's door of Dale's car open at one point. Viewing the evidence in a light most favorable to the government, we believe that an argument that the evidence was insufficient would be frivolous.
 
 
 8
 In a supplement to his motion to withdraw, counsel asserted that Dale could challenge the government's peremptory strike of an African-American juror who had stated during voir dire that she knew Dale's counsel from a prior business relationship. The government moved to strike the juror stating that:
 
 
 9
 Miss Earl indicated during questioning that she was acquainted with Mr. Ralph Williams, the attorney for the Defendant, from both a social acquaintance and as well as a relationship that Mr. Williams had with her brother in which Mr. Williams represented her brother....
 
 
 10
 [The relationship] involved her retaining his services to represent a member of the family. She indicated that she was the only contact person of the family here is Springfield....
 
 
 11
 [W]e feel [she may] be compromised in her deliberations in this case because of that relationship.
 
 
 12
 Second Supplemental Motion to Withdraw, Transcript at 55-56. Defense counsel opposed the peremptory challenge and raised an argument under Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The district court rejected the Batson challenge and concluded that the government had articulated an adequate reason for exercising the peremptory challenge.
 
 
 13
 "To survive a Batson challenge, unlike a challenge for cause, a peremptory strike need not be based on a strong or good reason, only founded on a reason other than race or gender." United States v. James, 113 F.3d 721, 739 (7th Cir.1997) (internal citation and quotation omitted). The district court's decision to grant the peremptory challenge was proper as the prosecutor articulated a valid concern regarding the prior relationship between the stricken juror and Williams, the defense attorney. Accordingly, any claim that the district court erred in permitting the challenge would be frivolous.
 
 
 14
 MOTION TO WITHDRAW GRANTED AND APPEAL DISMISSED.
 
 
 
 [1]
 Counsel's first brief submitted in support of his motion to withdraw was not accepted by this court. See United States v. Tabb, 125 F.3d 583, 584 (7th Cir.1997)
 
 
 [2]
 In the photograph, two of the men are flashing what was characterized by the government as "gang signals." In its ruling on the motion in limine, the district court stated that the government would not be allowed to make reference to the purported "gang signals" when admitting the photograph into evidence